JACK FROST, RUBY MAE FROST, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55333.  Filed August 30, 1957.

*Arthur Glover, Esq.,* and *Walter G. Russell, Esq.,* for the petitioners.

*James F. Hodge, Jr., Esq.,* for the respondent.

FISHER, *Judge:* Respondent determined a deficiency in petitioners' taxes for the calendar year 1951 in the amount of $824.36, basing his determination on the grounds, as stated in the deficiency notice, that—

the removal of your breeding herd from your cattle inventory and the listing of such breeding herd on your depreciation schedule constitutes a "change in accounting method" within the scope of the Internal Revenue Code, 1939, requiring the approval of the Commissioner of Internal Revenue.  In the absence of such approval the depreciation deduction in the amount of $2,113.75 claimed on your 1951 return is disallowed in full.

The question for our decision is whether or not petitioners could remove their breeding herd from inventory and depreciate same, in the absence of prior consent by respondent.  If the question is answered in the affirmative, respondent challenges the salvage value used by petitioners in determining their basis for depreciation.

### FINDINGS OF FACT.

Most of the facts have been stipulated and, as stipulated, are incorporated herein by this reference.

Petitioners Jack Frost and Ruby Mae Frost are husband and wife, and reside at Happy, Texas.  They filed a joint return for the year

1951 with the district director for the second district of Texas. At all times during the period here involved petitioners' primary occupation was that of farming and ranching in Randall and Swisher Counties, Texas, and Quay County, New Mexico.

Petitioner Jack Frost (hereinafter referred to as petitioner) entered into the farming and ranching business in 1936. He has been in the business of breeding cattle since 1938.

Prior to the year 1951, the taxable year here in question, petitioner included in inventory all cattle used for breeding purposes and valued the cattle on the "unit-livestock-price" method. This method was set up by petitioner's accountants, who have been employed by petitioner since 1936.

On January 1, 1951, petitioner took out of inventory and transferred to his depreciation schedule, *inter alia*, a part of his breeding herd made up of the cattle listed below, and claimed depreciation thereon in his 1951 return as indicated.

| Description of animals | Cost | Salvage value | Basis for depreciation | Estimated life (years) | Depreciation claimed |
|---|---|---|---|---|---|
| 3 bulls (5 years) | $750 | $150 | $600 | 3 | $200.00 |
| 3 bulls (3 years) | 750 | 150 | 600 | 5 | 120.00 |
| 240 cows (4 years) | 19,200 | 12,000 | 7,200 | 4 | 1,793.75 |

Petitioner did not request approval of respondent in transferring to his depreciation schedule the cattle described above, and respondent disallowed the deduction.

OPINION.

The question we are asked to decide is whether petitioner could remove his breeding herd from inventory and place it on a depreciation schedule, and on his return take a deduction for depreciation thereon, in the absence of the Commissioner's consent so to do.

Petitioner inventoried his cattle on the unit-livestock-price method for years prior to 1951. Having elected this method, the choice is binding upon him for subsequent years unless another method is authorized by the Commissioner. Regs. 111, secs. 29.22 (c)–6 and 29.41–2; *Elsie SoRelle*, 22 T. C. 459 (1954). Section 29.22 (a)–7, Regs. 111, provides in part:

In the case of a farmer reporting on the accrual basis (in which an inventory is used to determine profits), * * * livestock acquired for draft, breeding, or dairy purposes and not for sale, may be included in the inventory, instead of being treated as capital assets subject to the depreciation, provided such practice is followed consistently by the taxpayer. * * *

Section 29.23 (1)–10, Regs. 111, provides in part:

A reasonable allowance for depreciation may also be claimed on livestock acquired for work, breeding, or dairy purposes, unless they are included in an inventory used to determine profits in accordance with section 29.22 (a)–7. Such depreciation should be based on the cost or other basis and the estimated life of the livestock. If such livestock be included in an inventory no depreciation thereof will be allowed, as the corresponding reduction in their value will be reflected in the inventory. * * *

In *Elsie SoRelle, supra,* we had occasion to interpret the provisions of the regulations cited above. In that case we said (pp. 474–475):

(b) In Regulations 111, section 29.22 (a)–7, farmers reporting income on the accrual basis are given the option of either treating their breeding stock as "capital assets subject to depreciation" or including such stock in inventory. If the latter course is adopted, however, the taking of depreciation deductions on the breeding stock is expressly prohibited by section 29.23 (1)–10 of the regulations * * *

the aforementioned regulatory provisions have been contained in the regulations since 1934, and the statutory provisions which they interpret have been repeatedly reenacted, without changes here pertinent, since then. Consequently, this long continued executive construction must be deemed to have received legislative sanction. *Oil Shares, Inc.,* 29 B. T. A. 664.

In view of the regulations petitioners must fail in their claim that depreciation deductions on SoRelle's breeding herd for 1946 and 1947 are allowable. Since at least as far back as 1939 SoRelle, whose proper accounting method we have heretofore determined to be the accrual method, had been inventorying his livestock and including his breeding herd in that inventory. He had never in any of his tax returns claimed depreciation deductions for his breeding herd. Obviously, therefore, he had elected not to capitalize the breeding herd and take depreciation deductions thereon but, rather, to include it in inventory and forego depreciation deductions. By including the breeding herd in SoRelle's inventories for 1946 and 1947, we have accorded with this election by SoRelle. [Footnotes omitted.]

Petitioner makes no attempt to distinguish the *SoRelle* case and offers no acceptable reason for departing from the principles announced therein. We find no basis for distinction between the instant case and *SoRelle.* In both cases, petitioners used an inventory method of reporting income in the years preceding the one in issue. In both cases petitioners attempted to remove the breeding herd from inventory and place it on a depreciation schedule. As determined in *SoRelle,* the regulations prohibit this change without the Commissioner's approval.

Since the Commissioner's approval was not sought by petitioner before making the change in question (and petitioner does not allege that such approval was granted before or after such change) we think it is clear that respondent's determination must be sustained.

In view of our holding, it is unnecessary to consider the alternative issue presented by respondent.

*Decision will be entered for the respondent.*